AO 91 (Rev. 08/09) Criminal Complaint

FILED
RICHARD W. NAGEL
CLERK OF COURT
AUG -6 2026 3:38 P
U.S. DISTRICT COURT
SOUTHERN DISTRICT
OF OHIO-DAYTON

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

United States of America
v.
Ronnell Stacey Rhodes
*Defendant(s)*

Case No. 3:26 mj 333

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 8/5/2026 in the county of Montgomery in the Southern District of Ohio, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC s. 841(a)(1)&(b)(1)(C) | knowing and intentional possession with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance |
| 18 U,S.C. s. 922(g)(1)&924(a)(8) | felon in possession of a firearm that moved in interstate commece |

This criminal complaint is based on these facts:

See Attached Affidavit of Jorge Heredia

☑ Continued on the attached sheet.

Jorge Heredia
*Complainant's signature*

Jorge Heredia, SA of HSI
*Printed name and title*

Sworn to by reliable electronic means -- namely, telephone.

Date: 8/6/2026

*Judge's signature*

City and state: Dayton, Ohio

Caroline H. Gentry, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A CRIMINAL COMPLAINT**

I, Jorge Heredia being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint against and an arrest warrant for Ronnell Stacey Rhodes for violations of Title 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (felon in possession of a firearm), and Title 21 U.S.C. §§ 841(a)(l) and 841(b)(1)(C) (possession with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance).

2. I am a Special Agent of Homeland Security Investigations (HSI), having entered on duty on August 10, 2025. I completed formal training as a Special Agent on March 18, 2026, which included the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Training Center in Brunswick, Georgia. Prior to joining HSI, I served as a Captain in the United States Marine Corps for five years as a Communications Officer, leading teams of up to 40 Marines. I earned my commission from the United States Naval Academy, where I majored in Mathematics with Economics. Since joining HSI, I have participated in investigations involving drug trafficking, illegal firearms possession and use, and money laundering. Through these experiences, I am familiar with the day-to-day operations of distributors and transporters of controlled substances.

3. HSI Special Agent Training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law

permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

4. By virtue of my training and experience, I have become familiar with the various means and mechanisms used by drug traffickers to import and distribute controlled substances and to remain at large without being detected by law enforcement. I am familiar with the fact that drug traffickers make tremendous profits through drug trafficking and require large amounts of currency to operate surreptitiously.

5. I have been involved in interviewing individuals, confidential informants, and other non-defendant individuals with knowledge of illegal drug trafficking. During such interviews and through discussions with other experienced agents, I have become familiar with the day-to-day operations of distributors and transporters of controlled substances. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by illegal drug traffickers in the course of their criminal activities. This includes information about the packaging and preparation of narcotics, methods in which illicit drugs are smuggled, transported, and distributed, and security measures commonly employed by narcotics traffickers. These security measures include the use of firearms to protect their narcotics-related activities, and the use of cellular telephones, pagers, and personal digital assistants to facilitate communications while attempting to avoid law enforcement scrutiny.

6. As a result of my participation in these and other activities, and through my training, I have gained particular knowledge in the use of confidential informants, physical surveillance, consensual recordings, investigative interviews, garbage searches, pole-mounted cameras, and GPS tracking devices. Based on my training and experience, GPS tracking devices aid law enforcement in the investigation and detection of illegal drug trafficking by enabling

agents to analyze the suspected trafficker's travel patterns. GPS data can aid law enforcement in identifying co-conspirators as well as stash houses, which are residences where contraband and instrumentalities of drug trafficking, such as firearms and drug paraphernalia, are stored.

7. In addition to using these and other investigative techniques, I have analyzed information from traditional record sources, such as financial records, utility records, and telephone toll and subscriber records. I am aware that narcotics traffickers will use nontraditional record sources such as informal ledgers. These informal ledgers, commonly referred to as pay-owe sheets, list amounts of drugs received from sources and distributed to customers and the amounts of money received from customers and owed to sources. I have also gained experience in the identification and collection of drug and non-drug evidence.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PROBABLE CAUSE

9. As detailed below, during summer 2026, the United States, including the Montgomery County Tactical Crime Suppression Unit ("TCSU") and Homeland Security Investigations ("HSI"), have investigated Ronnell Stacey Rhodes for his role in distributing cocaine in southern Ohio.

10. In or around May 2026, Detective Devin Maloney of the TCSU received information from a reliable confidential informant (CI) that a black male residing in the area of Verona Road in Dayton, Ohio, was distributing large quantities of methamphetamine. The CI provided detailed information regarding the suspect and the vehicle that the suspect drove –

namely, a red Dodge pickup truck. The CI has been corroborated by law enforcement and has previously provided reliable information during state criminal investigations.

11. In or around May 2026, investigators located the red Dodge pickup truck described by the CI parked at or near 330 Verona Road, Dayton, Ohio. Official database queries revealed that the registered owner of the vehicle was Ronnell Rhodes. Additional queries identified Rhodes as the resident of 330 Verona Road, Dayton, Ohio. Law enforcement showed the CI a picture of Rhodes, and the CI identified Rhodes as the person the CI knew to be involved in drug trafficking. Law enforcement searched Rhodes' criminal history and learned that he had prior federal convictions for, among other things: distribution of cocaine for which he received a 60-month sentence (2010); and felon in possession of a firearm for which he received a 41-month sentence (2021). Rhodes currently is on supervised release to the United States District Court for the Southern District of Ohio.

12. During July 2026, investigators used the CI to conduct two controlled purchases of suspected crack cocaine from Rhodes within the City of Dayton. Prior to each transaction, investigators observed Rhodes leaving the residence located at 330 Verona Road. On each occasion, Rhodes met with the CI and sold the CI a substance that field tested positive for the presence of cocaine. Following the second controlled purchase, investigators observed Rhodes returning to the Verona residence. These observations suggest that Rhodes was utilizing the residence to facilitate his narcotics trafficking activities. Investigators also confirmed through Rhodes' federal probation officer that Rhodes' listed residence was 330 Verona Road, Dayton, Ohio.

13. On or about July 15, 2026, while conducting surveillance in an unrelated narcotics investigation, Detective Jesse Anderson saw a red Dodge pickup truck registered to Rhodes engaged in activity consistent with hand-to-hand drug transactions.

14. In or around August 2026, investigators obtained search warrants for Rhodes' person, his Dodge truck, and his residence at 330 Verona Road, Dayton, Ohio. On August 5, 2026, investigators executed the search warrants and, in doing so, encountered Rhodes inside of the home. While there were minors present in the home, no adult other than Rhodes was there. Inside the garage of the home, investigators found an inoperable vehicle with expired plates parked there. Law enforcement found a bag inside of the car containing a loaded Glock handgun. Based on my training and experience, I know that individuals like Rhodes who are on supervision often hide prohibited weapons to prevent their discovery by their probation officers. The location of this firearm inside of Rhodes' garage appears consistent with that practice. Additionally, investigators discovered Rhodes' Dodge Ram parked at or near 330 Verona. A search of that vehicle revealed approximately 29 grams of cocaine in small plastic baggies as though packaged for resale. Given observations throughout this investigation, I believe that Rhodes hid these drugs in his truck for later resale to drug addicts. I also know that individuals involved in drug trafficking frequently maintain firearms at their homes to protect themselves and their drugs. This knowledge further links that firearm discovered inside of the Verona garage to Rhodes.

15. HSI has spoken with the Bureau of Alcohol, Tobacco, and Explosives and confirmed that Glock firearms are not manufactured in Ohio. I therefore believe that the Glock firearm recovered from Verona moved in interstate commerce.

16. Based upon the foregoing, I respectfully request that the Court issue the above-requested criminal complaint and arrest warrant.

Respectfully submitted,

Jorge Heredia

Jorge Heredia
Special Agent
Homeland Security Investigations

Subscribed and sworn to ~~before~~ by telephone on August 6, 2026.

HONORABLE CAROLINE H. GENTRY
UNITED STATES MAGISTRATE JUDGE